PLYMER v. HARTFORD & N. Y. TRANSP. CO.

(Circuit Court, E. D. New York. July 9, 1900.)

BROKERS—EMPLOYMENT TO SELL VESSEL—COMMISSION—EVIDENCE—NEW TRIAL.
Plaintiff, having been authorized by defendant's superintendent, acting under orders from the general manager of the company, to sell one of defendant's vessels, subject to 5 per cent. commission, called the attention of the purchasing officer of the United States government to the vessel, and the superintendent, knowing of plaintiff's action, offered the vessel to the government at a price fixed by the general manager. The latter thereupon summoned defendant's trustees, who ordered the sale made, and the general manager ordered its consummation through the superintendent. Defendant's officers disclaimed any knowledge of plaintiff's connection with the sale, but there was evidence of frequent interviews between plaintiff and the superintendent, and communications made by the latter to the home office of the company, respecting the sale of the vessel, and the authority to sell subject to a commission. *Held*, that the evidence of plaintiff's employment to make a sale at the commission named justified the submission of the question to the jury, and supported a verdict in his behalf.

Foley & Wray, for plaintiff.
Wilcox, Adams & Green, for defendant.

THOMAS, District Judge. The defendant desired or was willing to sell one of its vessels. The general manager and substantial head of the business ordered the superintendent at New York to sell her to Flint & Co. at $150,000, subject to a definitely stated 5 per cent. commission. The superintendent, Noble, offered her to Flint & Co. as directed, and, as the jury found, also authorized the plaintiff to sell her. Through the procurement of the plaintiff, the vessel was sold to the United States government, and the superintendent, as the verdict establishes, knew that the plaintiff called the attention of the purchasing officer to her. The superintendent repeated the offer of the government to the general manager. The latter summoned the trustees, and the sale was ordered through the nominal president, who remitted the matter to the general manager, who in turn ordered the superintendent to consummate the sale. The officers of the company disclaim knowledge or notice of the plaintiff's connection with the matter, but the plaintiff's effective connection with the sale is manifest. The employment of a broker to sell was within the implied power of the general manager, and it may be presumed that the board acted upon the assumption that such usual power had been or would be exercised. Hence, if the general manager empowered the superintendent to act through a broker, such action of the superintendent was binding. That question was left to the jury in a manner quite as favorable to the defendant as it could demand, and the jury found that the superintendent did have authority to sell through the instrumentality of a broker, and that he did so act. The jury were not bound to accept the denials of the company's officers, and did not do so, and, taking into consideration the frequent interviews and explicit conversations between the plaintiff and Noble; the agreement between them, as the jury found; the communications made to and received from the home office respecting the sale of the vessel; the authority given the superintendent to sell to Flint & Co., subject to a commission; his testimony that in what transactions he had with reference to the sale of the vessel he was acting under the instructions of the general manager, and that his authority came from the home office; the fact that the general manager, who, as the superintendent testified, did "about all the business of the company," acted through the superintendent in the whole transaction,—furnished sufficient evidence to justify the submission of the case to the jury. The fact is that the sale was made through the intervention of the plaintiff. At the final moment another person attempted to intervene, to obtain the benefit of the sale, and to reap the reward of the plaintiff's services. The plaintiff incontrovertibly brought the matter to the attention of the government. The sale was effected through him, to the exclusion of the other claimant. The plaintiff earned the commissions, and the justice of his demand should not be defeated by the merest technicalities, such as a corporation may raise always, if it so inclines, by denying power to those to whom it customarily confides its business. The transaction shows a desire to sell the vessel, and direction of the superintendent to sell it, and willingness that the sale should be subject to a 5 per cent. commission; and there was ample evidence of the authorization

to the plaintiff by the superintendent, provided the plaintiff's evi-. dence be preferred; and there is evidence, gatherable from the entire transaction, of authority to the superintendent to employ the plaintiff. If, then, the ruling be correct that the resolution of the board of directors assumed that the usual agency of a broker might be involved, a new trial should not be granted. The proposition is believed to be correct, and the motion is denied accordingly.